IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MLI RX, LLC,<br>AMERISOURCEBERGEN CORP.,<br>AMERISOURCEBERGEN DRUG CORP.,<br>H.D. SMITH, LLC,<br>VALLEY WHOLESALE DRUG CO.,<br>LLC, (Subsidiary of H.D. Smith, LLC),<br>CARDINAL HEALTH, INC.,<br>CARDINAL HEALTH P.R. 120, INC.,<br>THE HARVARD DRUG GROUP, L.L.C.,<br>CARDINAL HEALTH 110 LLC,<br>McKESSON CORPORATION,<br>BURLINGTON DRUG COMPANY, INC.,<br>DAKOTA DRUG, INC.,<br>NORTH CAROLINA MUTUAL<br>WHOLESALE DRUG COMPANY,<br>J.M. SMITH CORPORATION, doing<br>business as "SMITH DRUG COMPANY,"<br>VALUE DRUG COMPANY, and<br>PRESCRIPTION SUPPLY, INC.,<br>            Plaintiffs,<br><br>v.<br><br>GLAXOSMITHKLINE LLC, formerly<br>known as "SMITHKLINE BEECHAM<br>CORPORATION," and doing business as<br>"GLAXOSMITHKLINE,"<br>TEVA PHARMACEUTICAL<br>INDUSTRIES LTD., and<br>TEVA PHARMACEUTICALS USA, INC.,<br>            Defendants. | CIVIL ACTION<br><br>NO. 23-429 |

## MEMORANDUM

**HODGE, K.**                                                                             May 30, 2023

Plaintiffs MLI RX, LLC, AmerisourceBergen Corp., AmerisourceBergen Drug Corp.,

H.D. Smith, LLC, Valley Wholesale Drug Co. LLC, Cardinal Health, Inc., Cardinal Health P.R.

120, Inc., The Harvard Drug Group, L.L.C., Cardinal Health 110 LLC, McKesson Corporation,

Burlington Drug Company, Inc., Dakota Drug, Inc., North Carolina Mutual Wholesale Drug Company, J.M. Smith Corporation, Value Drug Company, Prescription Supply, Inc. (collectively "Plaintiffs") brought this antitrust action against Defendants GlaxoSmithKline LLC, Teva Pharmaceutical Industries LTD., and Teva Pharmaceuticals USA, Inc. (collectively "Defendants") alleging violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C §§ 1-2.

Presently before the Court is Defendants' Motion to Transfer (ECF Nos. 28 & 44)[1] requesting that pursuant to Section 28 U.S.C. § 1404(a) and the "first-to-file" doctrine[2] this matter be transferred to the United States District Court for the District of New Jersey ("District of New Jersey") where a similar case, *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-00995 (D.N.J.) (the "New Jersey Action"), has been ongoing since February 17, 2012. Contemporaneously, Defendants also filed a Motion to Stay (ECF Nos. 30 & 44) this case pending the outcome of their Motion to Transfer. Plaintiffs do not dispute that the present matter is substantially similar to the New Jersey Action. Nor do they argue the District of New Jersey lacks a connection to this matter, or that venue and jurisdiction would be improper there. Rather, Plaintiffs contend that this case should not be transferred to the District of New Jersey because of the "history of long delays" in that court. (ECF No. 40 at 9.) Citing the public and private interest factors under 28 U.S.C 1404(a) that weigh for and against a change of venue, Plaintiffs argue that transferring this action to the District of New Jersey would be improvident because it would "exacerbate the judicial burdens clearly facing that district." (*Id.* at 10.) Plaintiffs also

---

[1] The Motion to Transfer and Motion to Stay were filed only by Defendants GlaxoSmithKline LLC and Teva Pharmaceuticals USA, Inc. on March 2, 2023, but Defendant Teva Pharmaceutical Industries Ltd. subsequently joined these motions on March 16, 2023. (ECF No. 44.)
[2] The "first-to-file" doctrine is sometimes referred to as the "first-filed" rule, and therefore, the Court uses these terms interchangeably.

emphasize that three of the sixteen Plaintiffs and one of the Defendants have a nexus to Pennsylvania. (*Id.*)

After reviewing the New Jersey Action, the Complaint in this matter, and the parties' briefing, the Court agrees with the Defendants. The Court finds that the first-to-file rule applies and supports a venue transfer to the District of New Jersey. The Court also finds that a venue transfer is warranted under Section 1404(a). Therefore, for the reasons more fully set forth below, the Court grants Defendants' Motion to Transfer and, thereby, denies the Motion to Stay as moot.

I. **BACKGROUND**

On February 2, 2023 – a day after the District of New Jersey issued a ruling denying Plaintiff's motion for class-certification in the New Jersey Action – Plaintiffs filed suit before this Court against the same defendants, GlaxoSmithKline LLC ("GSK"), Teva Pharmaceutical Industries LTD., and Teva Pharmaceuticals USA, Inc. (jointly "Teva") alleging that they violated antitrust laws through their settlement agreement to end a patent suit over GSK's brand-name drug Lamictal and Teva's generic form, lamotrigine. (ECF No. 1); *see also In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-00995 (D.N.J.) (ECF Nos. 553 & 554.) The basis of this litigation stems from the Hatch-Waxman Act of 1984 that allows drug manufacturers to bring generics to market for a 180-day exclusivity period by piggybacking off a brand-name drug's safety and efficacy studies and Food and Drug Administration ("FDA") approval, through what is known as an Abbreviated New Drug Application ("ANDA"). (*Id.* at 3.) To do so, the generic manufacturer certifies in its ANDA that the brand-name drug's patent is invalid, but if the brand-name manufacturer challenges that designation, FDA approval for the generic is enjoined for a certain time-period. (*Id.* at 4.) And that is exactly what occurred: GSK challenged

3

Teva in patent litigation which delayed Teva's generic version of lamotrigine from getting FDA approval and coming to market. Yet in that time, GSK, under the relevant regulatory framework, could have launched or licensed its own generic form of Lamictal, known as an "Authorized Generic (AG)." (*Id.* at 51-53.) Though Teva was successful in the patent litigation bench trial as to one infringement claim, the judge informed the parties that he would subsequently deliberate as to the remaining claims whereupon GSK and Teva decided, instead, to settle.[3] (*Id.* at 7.) As part of the settlement, GSK agreed not to launch an AG in exchange for Teva selling generic lamotrigine later than it otherwise would have been able to. (*Id.* at 9-14.) Plaintiffs, all purchasers of Defendants' drugs, claim that the settlement agreement amounts to an antitrust violation as it caused them to pay more than they otherwise would have, had market competition not been delayed. (*Id.* at 45.)

The New Jersey Action, originally filed on February 17, 2012, has resulted in a lengthy and complicated litigation history with numerous appeals and stays issued by the court. *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-00995 (D.N.J.) (ECF No. 1.) Originally, the District of New Jersey granted Defendants' motion to dismiss the putative class action complaint. *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 2:12-cv-00995, 2012 U.S. Dist. LEXIS 183627 (D.N.J. Dec. 6, 2012). On appeal, however, the United States Court of Appeals for the Third Circuit held that the complaint sufficiently alleged an antitrust violation under the Supreme Court's precedent in *FTC v. Actavis*, 133 S. Ct. 2223 (2013). *See King Drug Co. of Florence, Inc. v. SmithKline Beecham Corp.,* 791 F.3d 388 (3d Cir. 2015) (ruling that the *Actavis*

---

[3] In August of 2002, GSK filed a patent infringement suit against Teva in the District of New Jersey alleging that Teva's ANDA for generic lamotrigine infringed GSK's patent for Lamictal. *See Smithkline Beecham Corp. v. Teva Pharm. USA, Inc.*, No. 02-3779 (D.N.J. Aug. 5, 2002) (ECF No. 1). In late January of 2005, the case was tried before Judge John Bissell who declared that "Claim One of the Patent at issue is invalid." *See Smithkline Beecham Corp*, No. 02-3779 (D.N.J. Aug. 5, 2002) (ECF No. 86). Following the parties' settlement of the matter, the court dismissed the action and the bench ruling was withdrawn. *See Smithkline Beecham Corp*, No. 02-3779 (D.N.J. Aug. 5, 2002) (ECF Nos. 87, 88, & 89.)

holding is not limited to cash reverse payments and that a no-AG agreement is subject to antitrust scrutiny under the Rule of Reason).

In late 2015, the parties commenced fact discovery with an additional ten months of expert discovery concluding in 2018. *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 12-cv-995 (D.N.J.) (ECF Nos. 159, 255, 276, 390.) Following the completion of discovery, in 2018 the District of New Jersey certified a class that included in its definition both direct purchasers of generic lamotrigine and brand-name Lamictal, but later that decision was vacated by the Third Circuit with directions to the lower court on remand to perform a "rigorous analysis" as to whether to certify generic lamotrigine purchasers as a class. *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, No. 12-cv-995, 2018 WL 6567709 (D.N.J. Dec. 12, 2018) ("*Lamictal I*"), *vacated and remanded sub nom. In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020) ("*Lamictal II*"). On remand, the District of New Jersey denied class certification as to the generic-only purchasers, but since Defendants did not challenge certification as to 32 direct purchasers of the brand-name drug Lamictal, the parties disputed whether the District of New Jersey's original class certification in *Lamictal I* encompassed and remained intact as to the brand-name only purchasers following the Third Circuit's ruling in *Lamictal II*. *See In re Lamictal Direct Purchaser Antitrust Litig.*, No. 12-cv-995, 2021 WL 2349828 (D.N.J. June 7, 2021) ("*Lamictal III*"). The District of New Jersey then determined that since *Lamictal I* did not address the numerosity requirement of class certification, the court could not have certified the direct brand-name purchaser class. *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 12-cv-995 (D.N.J.) (ECF Nos. 528 at 7-8, 516 at 1.) The parties then engaged in another protracted dispute, culminating in a court order that prevented plaintiffs from utilizing a supplemental expert report after the deadline had expired. *In re Lamictal Direct*

*Purchaser Antitrust Litig.,* No. 12-cv-995, 2022 WL 190651, at * 3-4 (D.N.J. Jan. 21, 2021) ("Lamictal IV"). Since the opinions did not foreclose certification as to subclasses, on May 20, 2022, the plaintiffs filed a second motion to certify a class, this time defined to include a smaller subset of purchasers of generic lamotrigine and brand-name Lamictal, which the District of New Jersey denied on February 1, 2023. *In re: Lamictal Direct Purchaser Antitrust Litig.*, No. 12-cv-995 (D.N.J.) (ECF No. 553.)

In sum, after a decade's worth of protracted litigation where each party has vigorously argued their respective positions on behalf of their clients, what remains is a case in which the Third Circuit has already determined a plausible antitrust theory exists. However, class certification has been denied. Purchasers not named as plaintiffs who otherwise could have joined the New Jersey Action had the class certification been successful, now bring an action before this Court based on the same claims and allegations but styled as an individual rather than putative class action.

## II. DISCUSSION

### a. **First-to-File Doctrine**

The "first-to-file" doctrine is a comity-based rule that states when two substantially similar lawsuits are filed in different federal district courts with jurisdiction, there is a presumption that the court in which the case was filed first should hear both lawsuits except in special circumstance. *Smith v. M'Iver*, 22 U.S. 532, 536 (1824) ("[a]dmitting, then, the concurrent jurisdiction of the Courts…we think the case must be decided by the tribunal which first obtains possession of it, and that each Court must respect the judgment and decree of the other."); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-30 (3d Cir. 1941) (adopting rule that in "all cases of concurrent jurisdiction, the court which first has possession of the subject

must decide it"); *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) *aff'd*, 493 U.S. 182 (1990) (noting that the rule permits "trial judges to exercise their discretion by enjoining the subsequent prosecution of similar cases ... in different federal district courts."). The "letter and the spirit of the first-filed rule ... are grounded on equitable principles" and "the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Univ. of Pennsylvania*, 850 F.2d at 977. The rule empowers the district court to transfer, stay, or dismiss the subsequently filed action, though where the first-filed action presents a likelihood of dismissal, it is an abuse of discretion to dismiss the second-filed action with prejudice as it creates the risk that the merits of the claim will never be addressed. *See generally Chaevz v. Dole Food Co.,* 856 F.3d 205 (3d Cir. 2016).

The first-to-file doctrine is not absolute, though "the rule will usually be the norm, not the exception." *Univ. of Pennsylvania*, 850 F.2d at 979. The recognized exceptions for departing from the rule include: (1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5) where the later-filed action has developed further than the first-filed action; and (6) when the first filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum. *Univ. of Pennsylvania*, 850 F.2d at 976 (departure from the first-to-file doctrine justified where the defendants filed the first action shortly before the second-filed suit (which it had notice of) and by the defendants' admission, to specifically avoid an unfavorable ruling in the Third Circuit); *Owen v. Nestle Healthcare Nutrition, Inc.*, No. 22-cv-2855, 2023 U.S. Dist. LEXIS 36638, at * 4 (D.N.J Mar. 6, 2023).

Defendants argue that the first-to-file doctrine applies and warrants a transfer to the District of New Jersey because the New Jersey Action was filed first against the same defendants

by the same counsel involving substantially similar subject matter and identical claims. (ECF No. 28 at 13.) Cognizant of the differences between named-plaintiffs in the New Jersey Action and the present matter, Defendants state that strict-identity of parties is not required for the first-to-file doctrine to apply. Defendants further argue that Plaintiffs have engaged in forum-shopping – behavior the first-to-file doctrine is designed to prevent – by filing a nearly identical action before this Court after the District of New Jersey made unfavorable findings against the Plaintiffs and repeatedly denied class certification.

Plaintiffs concede that the substance of this action is substantially similar to the New Jersey Action. (ECF No. 40 at 9.) They also do not contest the overlap between the two cases as to the subject matter, issues, claims, and parties. Rather, they argue that the equities weigh against the application of the first-to file doctrine. Plaintiffs' argument in support of allowing this matter to proceed in this forum centers on their claim that the District of New Jersey, where the first-filed substantially similar case has been actively litigated for over a decade, is "extremely congested and overburdened" and that Plaintiffs (absent class members in that case) have been delayed enough. (*Id.* at 23-25.) In the Plaintiff's opinion, the fact that the New Jersey Action has proceeded past the motion to dismiss phase and discovery, but "has yet to have Rule 56 or *Daubert* motions filed or briefed, and has yet to receive a trial date" weighs in favor of departing from the first-to-file doctrine. (*Id.* at 25.) Plaintiffs admit that they would have likely elected to litigate as a class in the New Jersey Action had that court not denied class certification. (*Id.* at 8.) Nonetheless, now that Defendants have "gotten what they asked for," Plaintiffs state that they chose to file suit before this Court where venue is more convenient for "many of the parties" and that their choice of forum should be given substantial weight. (*Id.* at 8-10.)[4]

---

[4] The contacts with the state of Pennsylvania that Plaintiffs argue make this venue more convenient include the fact that three named Plaintiffs (AmerisourceBergen Co., AmerisourceBergen Drug Co., Value Drug Co.) and one

Plaintiffs bring the same claims with identical allegations against the same Defendants as the New Jersey Action with, as stated by the Defendants in their memorandum, a cut and paste complaint with minimal alterations or edits. (ECF No. 28-1 at 6, 11.) Both suits focus on the same alleged anticompetitive settlement agreement with little distinction other than the named plaintiffs. As Defendants correctly point out, the first-to-file doctrine "is not cabined to proceedings involving identical parties and identical issues, but extends to cases where there is a substantial overlap of the subject matter." *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 457 (E.D. Pa. 2013). Allowing cases to proceed in multiple jurisdictions that, though not identical, have substantially overlapping issues and parties would encourage parties to forum shop and bring lawsuits involving closely related issues in a court other than the one where a first-filed action is pending. *See Advanta Corp. v. Visa U.S.A., Inc.*, No. 96-cv-7940, 1997 U.S. Dist. LEXIS 2007, 1997 WL 88906, at * 3 (E.D. Pa. Feb. 19, 1997). Considering the substantial overlap, which even the Plaintiffs concede, the Court finds that the New Jersey Action and this case are sufficiently parallel for the application of the first-to-file doctrine.

The Court also finds that Plaintiffs fail to set forth sufficient circumstances warranting departure from the first-to-file doctrine. The District of New Jersey has a long history with addressing the very same allegations contained within Plaintiffs complaint. Plaintiffs attempt to minimize that history by noting that the original judge presiding over the New Jersey Action is deceased and that the current judge is set to retire on September 8, 2023. (ECF No. 54) The first-to-file doctrine, however, is not about the *judges* presiding over the case and their

---

Defendant (GSK) all maintain principal places of business in Pennsylvania. (ECF No. 1 at 8, 15, 26.) Plaintiffs also state that Defendant Teva used to be headquartered in Pennsylvania until 2018 but continues to maintain a significant presence in this state. (*Id.* at 15, 22.) Defendants point out that only three of the sixteen Plaintiffs are incorporated or maintain a principal place of business in Pennsylvania, and that the first named Plaintiff—MLI Rx LLC—is incorporated in New Jersey. (ECF No. 28 at 8.)

familiarity with the matter, but about comity, avoiding conflicting judgments, and efficient use of judicial resources between two sister *courts*.  Due to the significant overlapping factual and legal issues, and the advanced stage of the New Jersey Action, this Court is particularly concerned that both courts will be called upon to weigh in on the same issues.  The presence of the substantially similar New Jersey Action, thus, could lead to conflicting results, and the type of duplicative, inefficient, and piecemeal litigation that the first-to-file doctrine was designed to avoid.

Plaintiffs do not dispute the potential for inconsistent or conflicting rulings but claim it could be addressed by this Court "inviting the District of New Jersey to transfer the New Jersey Action to this District." (ECF No. 40 at 10.)  Even if the New Jersey Action is not transferred to this Court, Plaintiffs argue that inconsistent rulings will somehow be avoided since judgment in this matter will be reached before the New Jersey Action without a discussion of how preclusion issues may (or may) not impact these cases and cause additional delay.  (*Id.*)  In support of their faster-to-judgment argument, Plaintiffs state that since fact and expert discovery in the New Jersey Action is complete and is ready to be used in this matter, it is also "completed" here.  (*Id.*) Defendants have not served discovery on the Plaintiffs.  And just because discovery *could* be shared between the parallel actions, does not mean trial or resolution of this case would be accomplished faster here.  If judicial acceleration is what Plaintiffs seek, two intertangled litigations in two forums may not shepherd that goal but only exacerbate delay.

Plaintiffs' argument centers around speculative conjecture – that this Court will be faster at resolving the parties' dispute. Without citation to a single case, Plaintiffs argue that length of the New Jersey Action is a reason for departure from the first-to-file doctrine. In support, they claim that the United States District Court for the Eastern District of Pennsylvania ("Eastern District of Pennsylvania") has less of a backlog than the District of New Jersey without regard to

the unique nature of the New Jersey Action.  First, the Court notes that the New Jersey Action involves complex issues where two appeals were taken, including on a novel antitrust issue and class certification.  *See King Drug Co. of Florence, Inc,* 791 F.3d at 388 (addressing novel issue as to whether *Actavis* applied to no-AG agreement); *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020) (addressing class certification and remanding for further proceedings).  Second, while there are cases suggesting that the first-to-file doctrine should not be used to subvert resolution of a case on the merits, those cases are distinguishable in that they involved defendants who prevented the plaintiffs from having their day in court through procedural windfalls or raced to the courthouse to avoid application of a forum's adverse ruling. *See, e.g. Univ. of Pennsylvania*, 850 F.2d at 971 (3d Cir. 1988) (noting that if the first-to-file doctrine was invoked, prompt resolution would be subverted, while emphasizing the first-filer's attempt to sidestep precedent as a basis for departing from the rule); *Kerotest Mfg. Co. C-O-Two Fire Equip. Co.*,  189 F. 2d 31, 34 (3 Cir. 1951) (first-filed action dismissed because second-filed action involved party who could not be joined in each); *Crosley Corp. v. Westinghouse Electric & Mfg. Co.*, 130 F. 2d 474 (3rd Cir. 1942) *cert. denied*, 317  U.S. 681 (1942) (where two parallel cases were instituted one day apart, and therefore, potentially anticipatory, noting the first-to-file rule may be defeated when the second-filed action would provide more expeditious relief). Unlike those cases, Plaintiffs have not alleged that Defendants have attempted to tranquilize their claims by using procedural maneuvers, forum-shopping, or by racing to courthouse.  Nor have they alleged that they could not fully litigate this matter in New Jersey.

While the Court understands the Plaintiffs concerns about lengthy litigation – and indeed could find this argument persuasive in the appropriate case – Plaintiffs have not set forth any compelling grounds to suggest that judicial expediency would be advanced by litigation in this

forum other than their own supposition. Most critically, the very advanced stage of the decade-old litigation in the New Jersey Action and high risk of conflicting rulings weighs against Plaintiffs' judicial expediency argument. Splitting a judicial dispute between two sister courts on each side of the Delaware river, where the first-filed case has been litigated for years, would not lead to judicial acceleration, but rather, inefficiencies and duplication along with potentially conflicting rulings. This is precisely the type of scenario that the first-to-file doctrine is designed to guard against. Accordingly, this Court finds the first-to-file doctrine applies.

   b. **Transfer Pursuant to 28 U.S.C. § 1404(a)**

In addition to their first-to-file arguments, Defendants have moved for a venue transfer to the District of New Jersey under 28 U.S.C. § 1404(a). Plaintiffs argue that venue transfer under Section 1404(a) is not warranted, and that the first-to-file doctrine should also be defeated after weighing the factors that courts normally consider pursuant to this venue transfer statute.[5]

---

[5] Plaintiffs' arguments focus on utilizing the Section 1404(a) venue transfer factors to support departure from the first-to-file doctrine. Some federal courts treat the first-to-file doctrine as one of many factors in the overall Section 1404(a) calculus. *See, e.g. Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.,* 626 F.3d 973, 980 (7th Cir. 2010) ("the factors to be weighed in a first-to-file analysis are the same factors that apply to the decision of whether transfer is appropriate under section 1404(a)"); *Handy v. Shaw, Bransford, Veilleux, & Roth,* 325 F.3d 346, 350 (D.C. Cir. 2003) ( "Although some courts make this determination by using the so-called 'first-to-file' rule, we have emphasized that the district court must balance equitable considerations…"). Other federal courts treat the first-to-file doctrine as a separate and distinct inquiry from a Section 1404(a) venue transfer analysis without delving into the intricacies of that statute. *See, e.g. Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686. 690-91 ("It is important to clarify that . . .[this] action is not be transferred under 28 U.S.C. § 1404(a)" but rather "pursuant to the Court's inherent authority under the first-to-file rule" and therefore, "expresses no opinion on whether a transfer pursuant to  § 1404(a) would be proper."); *White v. Peco Foods, Inc.* 546 F. Supp. 2d 339, 340-43 (S.D. Miss. 2008) ("a motion to transfer pursuant to the first-to-file rule does not depend on the presence or absence of the § 1404(a) considerations."). The Court notes that the first-to-file and Section 1404(a) venue transfer factors, can, at times overlap, but that case law within the Third Circuit does not appear to support the approach espoused by Plaintiffs; rather, the rule is typically treated as a presumption that can be rebutted by a showing of special circumstances. *Cf. Univ. of Pennsylvania*, 850 F.2d at 977 (noting "exceptions to the rule are rare" though it "is not a rigid or inflexible rule to be mechanically applied"); *Owen v. Nestle Healthcare Nutrition, Inc.,* No. 22-cv-2855, 2023 U.S. Dist. LEXIS 36638 (D.N.J Mar. 6, 2023) (applying the first-filed rule without consideration of Section 1404(a)); *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013) (considering Section 1404(a) after holding that first-filed rule applies as a separate basis for a transfer); *Unlimited Tech.., Inc. v. Leighton*, 266 F. Supp. 3d 787, 798 (E.D. Pa. 2017) (after declining to apply the first- filed rule, considering defendant's anticipatory filing to weigh against defendants' choice of forum under Section 1404(a)). Ultimately, the Court need not resolve the interplay between the first-to-file doctrine and Section 1404(a) since a Section 1404(a) venue transfer to the District of New Jersey is also appropriate.

Under Section 1404(a), a district court may transfer any civil action to any other district where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts are afforded broad discretion to determine whether transfer is justified under Section 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). To prevail on a motion under Section 1404(a), the movant must generally establish: (1) an adequate alternative forum is available; (2) the private interests of the parties weigh in favor of transfer; and (3) the public interests weigh in favor of transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *MaxLite, Inc. v. ATG Elecs, Inc.*, 193 F. Supp. 3d 371, 392 (D.N.J. 2016). There is no question that this action could be brought in the District of New Jersey and the parties do not dispute that. Therefore, the Court turns to an analysis of the private and public factors under Section 1404(a).

Collectively, the private and public factors weigh in favor of transfer to the District of New Jersey. The public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.[6] *Jumara*, 55 F.3d at 879-80. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the

---

[6] Both parties argue at length about the New Jersey Action judge's alleged familiarity (or lack thereof) with this litigation. Under Section 1404(a), as distinguished from the first-to-file doctrine, a judge's familiarity with the litigation is part of the overall calculus as to whether a venue transfer is warranted. *Jumara,* 55 F.3d at 879-80 (emphasis added). However, that inquiry looks to the judge's familiarity with the "applicable state law in diversity cases." *Id*. (emphasis added). Plaintiffs' Complaint does not assert claims under any state law. Therefore, for purposes of Section 1404(a), the Court, similar to its first-to-file analysis, finds the parties' judge-familiarity arguments unpersuasive, if not irrelevant to this case.

13

parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses (only to the extent that the witnesses may actually be unavailable for trial in one of the fora); and (6) the location of books and records (only to the extent that the files could not be produced in the alternative forum). *Digital Tech. Licensing LLC v. Sprint Nextel Corp.*, No. 07-cv-5432, 2011 U.S. Dist. LEXIS 53904, at *3 (D.N.J. May 19, 2011); *see also Jumara*, 55 F.3d at 879. Importantly, the analysis is not limited to these explicitly enumerated factors, and no one factor is dispositive, but rather, is considered on a case-by-case basis. *Jumara*, 55 F.3d at 879.

The Court finds that convenience and the interest of justice would not be served by permitting this case to proceed in this Court on a duplicative, parallel track to the New Jersey Action, in light of New Jersey's nexus to where the Plaintiffs' claims arose and the parties. Plaintiffs' claims arise out of a 2005 settlement of patent litigation in the District of New Jersey that has led to a decade of litigation there. (ECF No. 40 at 16; ECF No. 28-1 at 17.) Defendants argue that the "center of gravity" of Plaintiffs' claims occurred in New Jersey, and thus, New Jersey's stronger connection to the operative facts supports a venue transfer. (ECF No. 53 at 15.) Plaintiffs argue, in contrast, that this factor is neutral, alleging their claims arose nationwide because Lamictal and the generic versions were sold across the country. To buttress their arguments, Plaintiffs allege that Defendants' settlement agreement was executed in the Eastern District of Pennsylvania, without mention of where the negotiations occurred or Defendants' conduct in New Jersey. (*Id.*) They also point to another agreement containing a Pennsylvania choice of law clause without citation to supporting case law or a discussion of how this provision might impact a Section 1404(a) transfer analysis. (ECF No. 40 at 28.) And the cases Plaintiffs cite in support of their factual nexus arguments are distinguishable. Those cases either involved a government-brought action with no ties to a particular locality or alleged nationwide injuries where the only connection to the proposed transferee court was its place as the defendant's state of incorporation. *See, e.g. United States v.*

14

*H & R Block, Inc.*, 789 F. Supp. 2d 74, 80 (D.D.C. 2011) (denying a transfer in antitrust suit brought by the Department of Justice for a proposed business transaction that would have a market impact nationwide); *Teva Pharm. Indus. Ltd. v. Astrazeneca Pharms. LP*, No. 08-cv-4786, 2009 U.S. Dist. LEXIS 75257, at * 17 (E.D. Pa. 2009) (denying transfer where transferee state was where Defendant was incorporated because the "court fails to see how a patent holder's state of incorporation necessarily has a greater interest in a patent suit than does another state in which the patented product is also commonly found"). Plaintiffs are all corporate entities who bring individual claims, and not a government enforcement action as in *United States v. H & R Block Inc.* or a putative class where injuries are felt by consumers nationwide. Unlike *Teva Pharm. Indus. Ltd. v. Astrazeneca Pharms. LP*, where the defendant's state of incorporation had little bearing on the patent infringement case, Defendants' conduct and settlement of patent litigation in New Jersey is highly relevant to Plaintiffs' antitrust reverse payment claims. To the extent there are nationwide injuries by virtue of nationwide sales, that does not negate New Jersey's substantial nexus to the operative facts. Ultimately, the Court concludes that because much of this litigation will likely focus on the settlement of patent litigation in New Jersey, this factor weighs in favor of transfer.

Plaintiffs argue that this case should remain before this Court because, on average, judges in the District of New Jersey have more pending cases than judges in the Eastern District of Pennsylvania where the average time to trial is allegedly less than half of what it is in New Jersey. (ECF No. 40 at 24.) The Court is unpersuaded by Plaintiffs' court congestion arguments. "Although the relative congestion of court dockets may be evaluated in a motion to transfer, it generally is not a factor worthy of great weight." *Penda Corp. v. STK, LLC*, Civ. No. 03-5578, 2004 U.S. Dist. LEXIS 18235, at *3 (E.D. Pa. Sept. 7, 2004); *see also York Grp., Inc. v. Pontone*,

No. 10-cv-1078, 2014 U.S. Dist. LEXIS 102139, at *13 (W.D. Pa. July 28, 2014) ("Court congestion is not a decisive factor; it must be weighed against all other relevant factors, and district courts within the Third Circuit have not placed 'great importance' on this factor").  Here, the proposed transferee and allegedly more congested court, the District of New Jersey, has had a head-start with identical litigation by a decade. The average time from filing to trial and caseload is less of a relevant consideration as the New Jersey Action is already well advanced and this action is in its infancy.  Therefore, even assuming there is congestion disparity between the two venues, this factor is outweighed by the efficiency of having two substantially similar cases proceed in a single forum, the District of New Jersey, where the litigation is already underway.

The Court also finds that the weight normally afforded to Plaintiffs' choice of forum is diminished by the pending and substantially similar action in the District of New Jersey and the fact that Pennsylvania is not the home forum for most of the Plaintiffs or many of the parties. Generally, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request…" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). However, "a plaintiff's choice of venue is given less weight if the plaintiff chooses a venue in which he or she does not reside and in which none of the operative facts giving rise to the suit occurred." *Cable v. Allied Interstate, Inc.*, No. 12-cv-96, 2012 WL 1671350, at *3 (E.D. Pa. May 11, 2012).  In terms of the parties' connection to either forum, only one of the Defendants (GSK) and three of the sixteen named Plaintiffs (AmerisourceBergen Co., AmerisourceBergen Drug Co., Value Drug Co.) have principal places of business in Pennsylvania.  (ECF No. 1 at 17 & 20.)  Of those three Plaintiffs, one is a wholly owned subsidiary of another.  (*Id*).   In contrast, one of the Defendants (Teva Pharmaceuticals USA, Inc.)[7] has a principal place of business in the state of

---

[7] Plaintiff MLI Rx LLC is incorporated in the state of New Jersey.  (ECF No. 1 at 17.)  Defendant Teva Pharmaceuticals USA, Inc. (whose parent company is Israeli corporation Defendant Teva Pharmaceutical Industries

16

New Jersey and one of the Plaintiffs (MLI Rx LLC) is incorporated there, whereas the remaining parties do not appear to be citizens of either state. (ECF No. 28-1 at 8.)  In sum, according to Plaintiffs' Complaint, it appears that neither Pennsylvania nor New Jersey is the home forum for thirteen out of the nineteen parties, while two parties reside in New Jersey and four (one of which is a subsidiary of another) reside in Pennsylvania. Plaintiffs' forum preference carries less weight given that Pennsylvania is not the home forum for the majority of the Plaintiffs and, when considering the totality of the parties' locations, only one additional party and its subsidiary resides in Pennsylvania versus New Jersey.  In addition, given the proximity between the two venues, it cannot be said that either forum will cause greater inconvenience to the parties in the aggregate.

It is true, as Plaintiffs argue, that when a class action is not certified, the defendants must typically face the consequences of that by having to litigate cases involving different plaintiffs, but similar fact patterns, in potentially different forums.[8] Therefore, the Court is not saying that Plaintiffs' choice of forum should be given no weight. However, given the proximity of New Jersey and its relation to the underlying claims in this lawsuit and the parties, the pending and practically identical New Jersey Action tips the scales in favor of a transfer to the District of New Jersey. *Synthes,* 978 F. Supp. 2d at 459 (presence of related case is a "powerful" factor that may tip the scales in favor of despite other *Jumara* factors suggesting the opposite).  This case

---

LTD) has a principal place of business in New Jersey. (*Id.* at 21.)  Plaintiff Value Drug Co. is a Pennsylvania corporation with a principal place of business also in Pennsylvania. (*Id.* at 20.)  Plaintiff AmerisourceBergen Co. and its wholly owned subsidiary Plaintiff AmerisourceBergen Drug Co. both have principal places of business in Pennsylvania. (*Id.* at 17.)  Defendant GSK has a principal place of business in Pennsylvania.  (*Id.* at 20.)

[8] While the importance of a plaintiff's forum choice may be diminished in the class action context, the corollary of this is that the plaintiff's forum preference may be considered when a court declines to certify a class action. *See, e.g. Fasano v. Coast Cutlery Co.*, No. 11-cv-3977 SDW, 2012 WL 1715233, at *3 (D.N.J. May 15, 2012) ("…a plaintiff's choice of forum in a class action may not be entitled to as much deference as in the ordinary case"); *MP Vista, Inc. v. Motiva Enterprises LLC*, No. 07-cv-099, 2008 WL 5411104, at *2 (D. Del. Dec. 29, 2008) (same). Nothing in this opinion should be read to imply that venue transfer is appropriate simply to consolidate a case with a first-filed action in another forum involving claims brought by different plaintiffs where class certification has been denied. Section 1404(a) and the principles laid out in the first-to-file doctrine are what guides this Court's decision, along with the length of the first-filed action and intertwined nature of the two matters.

proceeding in the District of New Jersey where a substantially similar action is pending serves the interests of justice by avoiding inconsistent results, promoting judicial efficiency, saving witnesses the time and expense of appearing at multiple trials, and avoiding duplicative litigation. *See Synthes*, 978 F. Supp. at 459 (E.D. Pa. 2013); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 453 (D.N.J. 1999).[9] Therefore, the Court finds that the relevant private and public factors weigh in favor of a venue transfer to the District of New Jersey under 28 U.S.C. § 1404(a).

### III.     CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion to Transfer and Deny Defendants' Motion to Stay. An appropriate Order will follow.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ Hon. Kelley B. Hodge

**HODGE, KELLEY B., J.**

---

[9] The other factors not discussed herein are generally neutral or not relevant with respect to advancing the interests of justice and convenience in this case.